**BANK OF TOKYO–MITSUBISHI,
LTD., Plaintiff,**

v.

**Vinay B. MALHOTRA,
et al., Defendants.**

No. 99 C 2238.

United States District Court,
N.D. Illinois.

Jan. 20, 2000.

**960**

Carrie Kiger Huff, Thomas Alexander Lidbury, Mayer, Brown & Platt, Chicago, IL, for plaintiff.

Edward Marvin Genson, Julianna Aviva Greenspan, Genson & Gillespie, Chicago, IL, Sally H. Saltzberg, Michael Loftus, Loftus & Saltzberg, P.C., Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Bank of Tokyo–Mitsubishi, Ltd. ("Bank") has filed a Fed.R.Civ.P. ("Rule") 56 motion for summary judgment against each of the two defendants in this action—Vinay Malhotra ("Vinay") and his wife Kusum Malhotra ("Kusum")—and has appropriately supported its motion with the statement of material uncontested facts called for by this District Court's LR 56.1(a), together with a supporting memorandum. Vinay and Kusum have in turn filed their Response to Motion for Summary Judgment, albeit without complying with LR 56.1(b) (although their Response has been coupled with affidavits signed by both of them). Bank's factual statement is therefore accepted as accurate (see LR 56.1(b) and such cases as *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 284 (7th Cir. 1997)), and the motion is ripe for decision.

### Vinay Malhotra

Vinay's guilty plea to the bank fraud charge brought against him, which has not only confirmed the total amount of his fraudulent depredations as $588,097 but has also resulted in a restitution order in that amount under his plea agreement, has thus established both the fact of his liability to Bank in this civil action and the base figure from which the amount of that liability must be calculated. Two potential components of the judgment amount therefore remain at issue:

1. whether prejudgment interest applies to that base amount (and, if applicable, the relevant interest rates); and

2. whether Vinay must forfeit all of his compensation during the term of his employment by reason of his acknowledged violation of his fiduciary duties as a Bank employee.

As for the matter of prejudgment interest, Vinay's counsel are unpersuasive in urging that the imposition of such interest would be a "sanction" and "inequitable" (Response Mem. 6), just as it is untenable for his counsel to contend (*id.,* emphasis added):

Vinay Malhotra was *punished* by being ordered to pay restitution to the Bank.

Indeed, an award of such interest is particularly appropriate for a judgment creditor such as Bank, for which money is its stock in trade (so that its loss of the use of money represents an actual and not a theoretical construct).[1]

■ As for the interest calculation, *Wernick* (as well as corresponding decisions from our own Court of Appeals in federal-question cases, though they are not directly applicable in a diversity action such as this one) confirms the propriety of the use of the prime rate in effect from time to time. And such cases as *Ryan v. City of Chicago*, 274 Ill.App.3d 913, 920, 211 Ill. Dec. 21, 654 N.E.2d 483, 489 (1st Dist. 1995) confirm the propriety of compounding the interest calculation to "provide[ ] full equitable restitution." Accordingly the sum of $211,298.52 (see Bank LR 56.1(a) Ex. 4's Ex. B) must be added to the $588,097.12 principal amount.

■ That same analysis does not however extend to Bank's effort to mulct Vinay in additional damages of a wholly punitive nature by forcing him to disgorge the entire sum of more than a half-million dollars that he had received as compensation and fringe benefits during his nine years of employment by Bank. There are to be sure a number of Illinois cases that uphold such forfeiture in cases that involve breaches of fiduciary duty, but Bank's counsel are guilty of overstatement in attempting to convert that doctrine from a discretionary one to a mandated result (Bank Mem. 12–15).

■ As in all diversity-of-citizenship actions, this Court is bound to follow the teaching of the Illinois Supreme Court (at least where it has dealt with a substantive law issue in the reasonably recent past). And in this instance Bank's emphasis on the quarter-century-old ruling in *Vendo Co. v. Stoner*, 58 Ill.2d 289, 305–06, 314,

321 N.E.2d 1, 10, 14 (1974)) must give way to the Illinois Supreme Court's most recent teaching (*In re Marriage of Pagano*, 154 Ill.2d 174, 190, 180 Ill.Dec. 729, 607 N.E.2d 1242, 1249–50 (1992) (emphasis in original):

> As these and many other cases demonstrate, when one breaches a fiduciary duty to a principal the appropriate remedy is within the equitable discretion of the court. While the breach may be so egregious as to require the forfeiture of compensation by the fiduciary as a matter of public policy (*see, e.g., ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1980), 90 Ill.App.3d 817, 836, 46 Ill.Dec. 186, 413 N.E.2d 1299), such will not always be the case. Punitive damages are *permissible* where a duty based on a relationship of trust is violated, the fraud is gross, or malice or willfulness are shown; such an award is not automatic. (*In re Estate of Wernick* (1989), 127 Ill.2d 61, 85, 129 Ill.Dec. 111, 535 N.E.2d 876; *Home Savings & Loan Association v. Schneider* (1985), 108 Ill.2d 277, 284, 91 Ill.Dec. 590, 483 N.E.2d 1225.)

In this instance Bank has said nothing to counter Vinay's Response Mem. 5 characterization of his services to Bank with the exception of his fraudulent activity (a resounding exception, to be sure):

> As evidenced by the Bank's own personnel files and Vinay Malhotra's employment history with the bank, Mr. Malhotra did an excellent job in all other aspects of his role as Vice President.

This Court has taken those competing considerations into account, and it holds that in this instance it would be extraordinarily punitive to create a situation in which nine years of Vinay's life would have been spent in his Bank employment without any compensation whatever. That smacks too

1. Interestingly enough, both sides seek to call *In re Estate of Wernick*, 127 Ill.2d 61, 87, 129 Ill.Dec. 111, 535 N.E.2d 876, 888 (1989) to their aid. But *Wernick*, which speaks of such prejudgment interest "as a concept of fairness and equity and not as a sanction against the defendant," plainly supports Bank's position (indeed, it does so almost on an a fortiori basis where an institution such as a bank is involved).

much of an effort to extract a pound of flesh that, in principal amount, would nearly equate to the fraudulent gains that this Court is requiring him to repay—nearly a 100% penalty.

Instead, in its "equitable discretion" as conferred by *Pagano,* this Court determines that the element of anomaly involved in Vinay's being paid *bonuses* at the same time that his employer was the unwitting victim of his fraudulent activity calls for the restoration to Bank of those bonuses, as well as of the amounts previously determined as restitution plus interest.[2] But what is *not* called for is the extraordinarily punitive required repayment of Vinay's total compensation and related fringe benefits.

Accordingly judgment is ordered to be entered in favor of Bank and against Vinay in the sum of $588,097.12 plus $211.298.52 plus $22,360, or an aggregate sum of $821,755.64. Because of this opinion's different disposition as to Kusum, this Court will await further input from the litigants as to the subject of possible Rule 54(b) applicability to that judgment order.

### Kusum Malhotra

Bank also seeks to hit Kusum with joint and several liability to the extent of $799,395.64 (the sum of Vinay's restitution and prejudgment interest liability), on the theory that she was unjustly enriched by Vinay's illegal activity. To that end Bank points to Kusum's acknowledgment that the three accounts into which Vinay deposited the embezzled funds were joint accounts. Response Mem. 2 counters by saying:

> Kusum Malhotra is guilty of nothing more than being the wife of a man who inappropriately took money from his employer.

And Kusum's accompanying affidavit, in addition to identifying the couple's two children (one age 21 and attending college, the other age 15 and living at home), not only disclaims any prior knowledge of Vinay's illegal activities but also says this as to the residence that is apparently the only material asset that might escape (at least in part) the judgment being entered against Vinay (Aff.¶ 2):

> That we purchased our home at 1704 Kenyon Drive in Naperville, Illinois prior to my husband working for the Bank of Tokyo–Mitsubishi. We used my savings and salary to help purchase the home and we used my salary to maintain the home since we have lived here.

Bank really offers little more than its conclusory assertion as to unjust enrichment to support its independent claim against Kusum. Unjust enrichment is of course an equitable doctrine, and Bank simply has not put enough flesh on the bones of its claim to support a judgment against Kusum as a matter of law in such equitable terms. Its Rule 56 motion for a judgment against Kusum as a matter of law is denied.

### Conclusion

For the reasons stated here, there is no genuine issue of material fact as to Vinay's liability to Bank or as to the amount of that liability, so that Bank is entitled to a judgment as a matter of law in those respects. As stated earlier, judgment is ordered to be entered in Bank's favor and against Vinay in the sum of $821,755.64. Bank's Rule 56 motion is denied as to Kusum.

2. In light of the punitive aspect of this component of the damage award, no interest will be added to the aggregate bonuses of $22,360. In that respect, it is noteworthy that even Bank's pound-of-flesh approach has not sought the addition of interest to the proposed forfeiture of Vinay's compensation.